**MICK LEVIN, ESQ. (SBN 021891)**
micklevin@mlplc.com
**MICK LEVIN, P.L.C.**
3401 N 32nd Street
Phoenix, AZ 85018
Ph: 480-865-3051
Fx: 800-385-1684

**ALAN BOWMAN, ESQ.  (SBN 006134)**
**TERRITORIAL LAW**
113 W. Giss Parkway
Yuma, AZ 85364
Telephone: (928) 783-8879
Facsimile: (928) 329-1816
Email: abowman@territoriallaw.com
*Attorneys for Plaintiff*

## UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| Cesar Salcedo, a single person;<br><br>            Plaintiff<br><br>vs.<br><br>Colony Insurance Company, a Virginia Corporation; Alliant Insurance Services, Inc., a California Corporation;<br><br>            Defendants | Case No.<br><br><br><br>**COMPLAINT** |

Plaintiff by and through counsel undersigned, allege as follows:

## <u>GENERAL ALLEGATIONS</u>

1.      At all times material hereto, Plaintiff Cesar Salcedo (hereinafter, "Cesar") was a

resident of Yuma County, Arizona.

2.  At all times material hereto, Defendant Colony Insurance Company (hereinafter, "Colony Insurance Company") was a Virginia insurance corporation authorized by the Arizona Department of Insurance to conduct business in the State of Arizona.

3.  At all times material hereto, Defendant Alliant Insurance Services, Inc. (hereinafter, "Alliant") was a California insurance producer and surplus lines broker corporation authorized by the Arizona Department of Insurance to conduct business in the State of Arizona.

4.  This Court has jurisdiction pursuant to 28 U.S.C. §1332 as there is diversity of citizenship between the parties and the amount in controversy exceeds $75,000.00.

5.  At all times material hereto, non-party JK Farm Labor, LLC ("JK Farm") was a farming and farm labor staffing limited liability company owned and operated by non-party Jose Lopez.

6.  Jose Lopez's primary language is Spanish.

7.  Jose Lopez reads and speaks almost exclusively in Spanish and reads, speaks, and understands very little English.

8.  Some time prior to September 13, 2019, JK Farm utilized the services of Alliant to advise, recommend, and assist with purchasing insurance for JK Farm's business needs.

9.  JK Farm's business needs, as a farming and farm labor staffing company, include operating farm equipment on unimproved public roadways to move farm equipment between farms and farm parcels, to refuel, and to perform offside maintenance or repair work.

10.   Alliant advised, recommended, and purchased a Commercial Farm and Ranch Policy of insurance for JK Farm through Colony Insurance Company, policy number 101 FO 0095985-01 (hereinafter referred to as "JK Farm's Policy").

11.   JK Farm's Policy indicates on the declaration page a per incident liability limit in the amount of $1,000,000.00 when the insured becomes legally obligated to pay money as damages as a result of bodily injury.

12.   Unbeknownst to JK Farm, JK Farm's Policy contained Endorsement U923-0617 (hereinafter referred to as the "Endorsement").

13.   There are no indica of the Endorsement on JK Farm's Policy declaration page other than a general indication that JK Farm's Policy contains endorsements.

14.   Furthermore, the Endorsement is located on page 66 of the 77-page policy.

15.   The Endorsement indicates, in relevant part, $25,000.00 is the most Colony Insurance Company will pay as damages sustained and expenses incurred in the defense and adjustment of all claims and lawsuits arising out of the operation of farm machinery on public roads.

16.   The Endorsement further indicates that Colony Insurance Company's "right and duty to defend ends when payment of judgments, settlements or expenses are paid for damages…".

17.   On September 13, 2019, Cesar and Edgar Gerardo-Acosta were involved in a collision (hereinafter referred to as the "Collision").

18.   The Collision occurred when Cesar Salcedo, driving his truck while on the job, crashed with a tractor operated by Edgardo Gerardo-Acosta.

19. At all times material hereto, Edgardo Gerardo-Acosta was an employee of JK Farms Labor, LLC ("JK Farm").

20. As a direct and proximate result of the collision, Cesar sustained life-threatening and life-altering injuries.

21. On or about September 11, 2020, Cesar filed a lawsuit against Edgardo Gerado-Acosta and JK Farm, among others, in the Yuma County Superior Court in and for the State of Arizona, case number S1400CV202000487 (hereinafter referred to as the "Yuma County Lawsuit").

22. The Yuma County lawsuit alleged, among other things, that JK Farm was vicariously responsible for the acts of Egardo Gerardo-Acosta because he was JK Farm's employee and alleged that JK Farm was liable to Cesar Salcedo for negligently hiring, training, supervising, and retaining Edgardo Gerardo-Acosta.

23. On or about October 7, 2020, JK Farm made demand upon Colony Insurance Company to defend and indemnify JK Farm in the Yuma County Lawsuit, pursuant to JK Farm's Policy.

24. On or about November 2, 2020, Colony Insurance Company accepted JK Farm's tender of the defense under a reservation of rights and advised JK Farm that the Endorsement applied to Cesar's claims against JK Farm.

25. Colony Insurance Company retained the services of Jones, Skelton & Hochuli to provide JK Farm a defense in the Yuma County Lawsuit.

26. At some point prior to November 18, 2021, Colony Insurance Company's costs to defend JK Farm in the Yuma County Lawsuit exceeded the $25,000 sublimit defined in the Endorsement.

27. On November 18, 2021 Colony Insurance Company filed a Complaint in the United States District Court for the District of Arizona, Case No. 2:21-CV-01964-SMB, against JK Farm and Cesar, among others (hereinafter referred to as the "Federal Lawsuit").

28. In the Federal Lawsuit, Colony Insurance Company seeks a Declaratory Judgment indicating that the $25,000.00 sublimit in the endorsement is valid; that the $25,000.00 sublimit has been eroded; that Colony Insurance Company owes no further duty to defend or indemnify JK Farms; and that JK Farms must reimburse Colony Insurance Company for the costs Colony Insurance Company has incurred over and above $25,000.00.

29. Colony Insurance Company also requested that JK Farm pay its attorney fees and costs incurred in the Federal Lawsuit.

30. On or about October 10, 2022, Cesar sent a Policy Limits Demand to coverage counsel for Colony Insurance Company.

31. The Policy Limits Demand requested tender of the face value of JK Farm's Policy, $1,000,000.000, in exchange for a dismissal without prejudice of all Cesar's claims against JK Farm in the Yuma County Lawsuit.

32. Colony Insurance Company rejected Cesar's Policy Limits Demand offer in a letter on or about October 17, 2022.

33. On November 28, 2022, JK Farm entered into a settlement agreement with Cesar in the Yuma County Lawsuit, out of which Colony Insurance Company's Complaint for Declaratory Relief arises (the settlement agreement is hereinafter referred to as the

"Morris Agreement"). A true and correct copy of the executed Morris Agreement is attached hereto as Exhibit 1.

34. JK Farm believes the withdrawal of the defense provided for JK Farm by Colony and/or the withdrawal of the indemnity provided on the declaration's page of JK Farm's Policy would result in its financial ruin.

35. Rather than face the sharp thrust of liability, JK Farm wished to shield itself from liability far in excess of what it could possibly afford to pay.

36. In exchange for a Covenant Not to Execute and other consideration, JK Farm agreed to assign all rights, titles, and interests in any contract and/or claim it may have with and against Colony Insurance Company and Alliant Insurance Services, Inc. to Cesar Salcedo.

## COUNT I – BREACH OF CONTRACT

37. Plaintiff incorporates the preceding paragraphs as if fully reincorporated herein.

38. Arizona law recognizes the doctrine of reasonable expectations in insurance contracts.

39. If an insurer, such as Colony Insurance Company, had reason to know that an insured would not have accepted the agreement if he had known that the agreement contained the particular term, then the insured cannot be bound to it.

40. Such knowledge may come from prior negotiations, inferred from the circumstances, or determined if the term is so bizarre or oppressive or if it eviscerates the non-standard terms explicitly agreed to.

41. Such a determination should be made after considering evidence on surrounding circumstances, including negotiation, prior understandings, subsequent conduct, and the like.

42. The reasonable expectations doctrine applies to even unambiguous boilerplate terms in standardized insurance contracts when: the contract terms, although not ambiguous to the court, cannot be understood by the reasonably intelligent consumer or when the insured did not receive full and adequate notice of the term in question and the provision is either unusual or unexpected or one that emasculates apparent coverage.

43. JK Farm's principle reads, speaks, and understands little English.

44. The Endorsement, located on or about page 66 of an approximately 77 page-long policy was never called to JK Farm's attention.

45. The Endorsement is inconspicuous and hidden in the fine print, on or about page 66 of the approximately 77-page-long JK Farm's Policy.

46. The Declarations page of JK Farm's Policy clearly indicates coverage in the amount of $1,000,000.00 per incident.

47. Had JK Farms been aware of the Endorsement for farm machinery or equipment when used on public roads, JK Farm would not have opted to purchase insurance from Colony Insurance Company and would have sought a policy of insurance that covered the operation of farm equipment and machinery on public roads.

48. For the foregoing reasons, JK Farm had the reasonable expectation that JK Farm's Policy included coverage in the amount of $1,000,000.00 per incident with no exclusions for farm tractor equipment.

49. Colony Insurance Company breached the reasonable expectation of JK Farm.

50. As a direct and proximate result of Colony Insurance Company's breach, JK Farm was damaged.

51. Cesar, as assignee of JK Farm's claim, is entitled to seek recovery from Colony Insurance Company.

## COUNT II – BAD FAITH

52. Plaintiff incorporates the preceding paragraphs as if fully reincorporated herein.

53. In every policy of insurance of insurance, there is a duty of good faith and fair dealing.

54. In all aspects of investigating or evaluating a claim, the duty of good faith and fair dealing requires Colony Insurance Company to give as much consideration to JK Farm as it gives its own interests.

55. Colony Insurance Company breached their duty of good faith and fair dealing to JK Farm by failing to indemnify JK Farm regarding Cesar's claims against JK Farm.

56. Colony Insurance Company's breach of their duty of good faith and fair dealing caused JK Farm damages in that JK Farm was forced to bear the sharp thrust of liability and expose JK Farm to a judgment far in excess of JK Farm's ability to pay.

57. As a direct and proximate result of Colony Insurance Company's breach, JK Farm was damaged.

58. Cesar, as assignee of JK Farm's claim, is entitled to seek recovery from Colony Insurance Company.

## COUNT III – PRODUCER MALPRACTICE

59. Plaintiff incorporates the preceding paragraphs as if fully reincorporated herein.

60. Some time prior to January 18, 2017, JK Farm sought the advice, counsel, and professional services of Alliant, a licensed insurance producer, to advise, recommend, and assist with purchasing insurance for JK Farm's business needs.

61. Upon information and belief, JK Farm informed Alliant of JK Farm's business needs, as a farming and farm labor staffing company, including operating farm equipment on unimproved public roadways to move farm equipment between farms and farm parcels, to refuel, and to perform offside maintenance or repair work.

62. Upon information and belief, the Commercial Insurance Application completed by JK Farms by and through its insurance agent, Alliant, in or about January, 2017 indicates JK Farm is engaged in weeding, thinning, and irrigation of grow crops; milking, "milling" and tendering cows on dairy farms; and fruit or vegetable harvesting contracting.

63. Alliant advised, recommended, and purchased a Commercial Farm and Ranch Policy of insurance for JK Farm through Colony Insurance Company on or about January 18, 2017 (hereinafter referred to as the "JK Farm's 2017 Policy").

64. JK Farm's 2017 Policy contained Endorsement U923-114.

65. Upon information and belief, Endorsement U923-114 is the predecessor to the Endorsement. Upon information and belief, the Endorsement was added to JK Farm's policy on or about February 14, 2018.

66. The Endorsement indicates, in relevant part, $25,000.00 is the most Colony Insurance Company will pay as damages sustained and expenses incurred in the defense and adjustment of all claims and lawsuits arising out of the operation of farm machinery on public roads.

9

67.    Had JK Farms been aware of the Endorsement for farm machinery or equipment when used on public roads, JK Farm would not have opted to purchase insurance that covered the operation of farm equipment and machinery on public roads.

68.    Alliant, through its employees or agents, as professionals engaged in business as insurance producers, owed a duty of care to its client JK Farm.

69.    Alliant breached their duty to JK Farm when Alliant failed to provide the services of professional insurance agents within the standard of care.

70.    As a direct and proximate cause of Alliant's breach of the standard of care, JK Farm was damaged.

71.    Cesar, as the assignee of JK Farm, claims damages from Alliant.

WHEREFORE, Plaintiff prays for Judgment against Defendants as follows:

    A.    General and compensatory damages in an amount to be proven at trial;

    B.    Plaintiff's costs incurred herein;

    C.    Attorneys fees as permitted under A.R.S. 12-341.01(a); and

    D.    Such other relief as the Court deems proper

DATED this 2nd day of August, 2023

MICK LEVIN, P.L.C.

/s/ Mick Levin
Mick Levin
*Attorneys for Plaintiff*